GUY MITCHELL v. THE STATE.

No. 16516. Delivered March 28, 1934.
Rehearing Denied January 30, 1935.
Reported in 78 S. W. (2d) 198.

624

The opinion states the case.

*C. S. Farmer, Joe W. Taylor,* and *John N. Gauntt,* all of Waco, for appellant.

*Willard McLaughlin,* Crim. Dist. Atty., and *Frank M. Wilson,* Asst. Crim. Dist. Atty., both of Waco, of counsel, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, ninety-nine years in the penitentiary.

Deceased was a police officer in the city of Waco, and apparently attempted to arrest appellant, who was carrying a pistol. A struggle ensued in which deceased was shot through the head and killed. After he had fallen, the testimony shows that appellant beat the head of deceased into a pulp with deceased's own pistol. We think the facts sufficient to justify the jury's verdict.

The record contains but one bill of exceptions, which presents appellant's complaint of the refusal of his motion for a continuance. It is shown that following his indictment for murder, appellant sued out a writ of habeas corpus in an effort to secure bail, and upon a hearing was remanded without bail, and appealed to this court. The habeas corpus hearing was had August 9, 1933. Thereafter and on August 21st appellant's main case was called for trial. He moved for a continuance on the ground that the Court of Criminal Appeals had not passed on his appeal in the matter of bail. The motion for continuance was overruled, he was convicted and given the punishment above mentioned. As authority for his contention that the court committed error in the matter referred to, appellant cites article 1, section 11 of our Constitution; Streight v. State, 62 Texas Crim. Rep., 453; Choice v. State, 52 Texas Crim. Rep., 285; Spencer v. State, 52 Texas Crim. Rep., 289, and Click v. State, 118 Texas Crim. Rep., 404. These authorities have all been examined. Our Constitution but provides that all prisoners shall be bailable by sufficient sureties, unless for capital offenses. The Streight case, supra, was on unusual facts, as

appears from the opinion, it being set out that after indictment for murder Mrs. Streight asked, by a habeas corpus, for a hearing for bail, which was set down for October 11th. Later the court set her main case for the same day. On that day she asked that she be given a hearing on her application for bail, which was refused, and she was put to trial for murder and convicted. On appeal, among numerous other matters held erroneous, this court held that Mrs. Streight was improperly denied her right to a hearing upon her application for bail. In substance the same holding appears in Click v. State, supra, in which case it appears that after the main case was set down for trial, for a day certain, an application by means of a habeas corpus for bail was made, it being presented some seven or eight days before the date of trial, and it was further shown that appellant insisted upon a hearing so that if allowed bail, same might be made before trial. There is no doubt of the fact that bail is not only a matter of right in bailable cases, but that it is also a right of value to the accused, and trial courts should not do as is suggested in the opinion in the Streight case, supra, "Deliberately set the case for trial so as to prevent a hearing on the habeas corpus matter." Nothing in this record supports any contention that appellant was not properly given a hearing on his habeas corpus application, but we do not think he can find support for a proposition that simply because under our laws he can have a hearing in the appellate court as well as in the court a quo, that ergo he is entitled to delay the trial of his main case, and obtain a continuance thereof simply to give the appellate court time to pass on his appeal in the habeas corpus matter and determine whether he is entitled to bail. We might reason about the matter,—for it is apparent that even if allowed bail in a murder case such as this, there would still remain the unsolved problem of the amount of such bail, and the ability of the accused to make it,—added to the uncertainty as to when the case would be reached and decided in the appellate courts, all of which make difficult the rule laid down in many cases, that in an application for a continuance the accused must show himself entitled thereto by definite, exact and certain averments. To grant a continuance upon the contingencies here involved would clearly be to attach one presumption to another. In the instant case, on the question of the ability of the accused to make bail, we note that the statement of the testimony heard by the trial court on the habeas corpus hearing is set out in the bill of exceptions presenting this complaint. In same it appears that the only witness as to the ability of appellant to make

bail was his brother, who swore that none of appellant's relatives were people of means,—nor did appellant have any rich or influential friends who could make his bond, and on cross-examination this witness said: "I don't know of anybody at all who would sign his bond."

However, in view of what we said in the Streight case, supra, to-wit: "Of course, the court should not permit continuances to be secured by merely filing an application on the day set for trial of a case, or so short a time before that day as to render it impossible to hear it before the day set for the trial. But in this case the application was made almost immediately after indictment found and before the main case was set for trial, and the court should not then have deliberately set the case for trial so as to prevent a hearing in the habeas corpus matter. Upon a proper showing the habeas corpus should always be heard, but *it should never be permitted to be so used as to continue a case.*" (Italics ours.) And also what we said in Sapp v. State, 87 Texas Crim. Rep., 612, we deem the matter one of settled law in this State. In the Sapp case we approved what had been said in the Streight case, and held that the accused was not entitled to continue the case to await the action of the appellate court on his appeal regarding his bail. Examining the record in the Sapp case, which is on file in the office of the clerk of this court, we observe that Sapp had been denied bail on a habeas corpus hearing, and had appealed to the Court of Criminal Appeals, where the appeal was pending when his main case was called for trial in the lower court, and that he then asked a continuance until his appeal in the habeas corpus matter could be passed on, the question there being almost exactly similar to the one under discussion.

By and large appellant has something over fifty exceptions to the court's charge. We have carefully considered the charge of the court and are not able to agree that any of the exceptions are well taken. Analysis and discussion of same would but lengthen this opinion without profit to the accused, or enlightenment to the profession or addition to the value of the precedents. We have gone over all the exceptions together with the exhaustive charge given by the learned trial judge, in the light of appellant's brief, and believe that every legal phase of this case was properly covered by the charge.

Finding no error in the record, the judgment will be affrmed.

*Affirmed.*

MORROW, PRESIDING JUDGE (Concurring).—In this case of Guy Mitchell v. State, No. 16,516, and also in *Ex parte Guy

Mitchell, No. 16,322, appellant contends in substance that he was entitled to bail pending appeal, and having been denied such bail the affirmative of his conviction cannot be sustained. In the trial of the case bail was denied on the 18th day of August, 1933. An appeal was prosecuted to this court, which at that time was in vacation and without authority to promptly pass upon the appeal. If we understand the record, the case was called for trial on the 27th day of July, 1933, at which time appellant called attention to the fact that a writ of habeas corpus was pending in which he was seeking bail. The hearing of the writ was postponed by agreement until the 9th day of August, 1933. The trial on the issue of bail seems to have concluded on the 18th day of August, 1933. The judgment being adverse to the appellant, an appeal was prosecuted to the Court of Criminal Appeals, which at that time was not in session in obedience to the constitutional provision, article 5, section 5, which reads as follows: "The Court of Criminal Appeals shall sit for the transaction of business from the first Monday in October to the last Saturday of June in each year." In October, 1933, the appeal was decided in favor of the appellant in an opinion delivered October 11, 1933.

The question now involved grows out of the contention of the appellant that since the Court of Criminal Appeals decided that he was entitled to bail, the judgment convicting him should be reversed. Reference has been made to a number of cases, including Streight v. State, 62 Texas Crim. Rep., 453; Choice v. State, 52 Texas Crim. Rep., 285; Spencer v. State, 52 Texas Crim. Rep., 289; and Click v. State, 118 Texas Crim. Rep., 404.

An opinion of this court has been written by Judge Lattimore refusing to reverse the judgment. The writer concurs in the result stated by Judge Lattimore but feels constrained to express some additional views touching the subject in hand.

In the Bill of Rights, section 11, the following appears: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law."

Many efforts have been made to accurately define the term "when the proof is evident." See Vernon's Ann. Tex. Constitution, Part 1, p. 93, and cases cited. However the term may be defined, it depends in every case upon the evidence adduced in the trial court. Primarily, it is the duty of the trial judge to determine whether or not the *proof is evident" within the*

*meaning of the law.* Manifestly, that is a matter upon which in a given case there might be a difference of opinion. To illustrate, the trial court might *in a given case* conclude that the proof was evident and the appellate court in passing upon the same evidence or facts might conclude that the proof was not evident within the meaning of the law. Unlike the appellate court, which is adjourned so far as the decision of cases is concerned for three months of the year by virtue of the constitutional provision quoted above, the trial courts throughout the State are in session every month of the year and some practically every day for that matter. In the present instance, the trial judge was called upon to determine the issue before him, namely, Was the proof evident that a capital crime had been committed by the appellant? Having decided that the proof was evident, it was not incumbent on him to delay the trial for several months until the Court of Criminal Appeals was in session. The trial judge evidently acted upon the theory that while the decision was one upon which courts might differ, still there was no appellate tribunal with jurisdiction of the matter at that time, and therefore decided that he was not obligated to postpone the trial of the case but that he was charged with the duty of proceeding with the trial. In the opinion of the writer, the trial judge charged with the duty was also possessed of a judicial discretion to deal with the situation as it presented itself under the circumstances. Having dealt with it and proceeded with the trial, a reversal of the conviction could not be demanded upon the sole ground that appellant had a legal right to have his case continued until the accuracy of the judgment of the trial court touching the subject of bail had been passed upon by the appellate court. It is thought that the accused would not have such right unless it was based upon a definite showing that the trial court was guilty of an abuse of the discretion which the law vested in him primarily to determine whether the case was one which entitled the accused to bail or not. In the absence of a showing of such abuse in the present instance, this court would not be justified in reversing the judgment of conviction upon the ground that the accused was not allowed bail at the time of his trial.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant urges certain exceptions to the charge, and to the refusal of special charges. We have examined each of his contentions and think they are without merit.

Regarding appellant's renewed contention that the trial of his case should have been postponed until the question of his right to bail had been passed upon by this court in an appeal from an order denying bail, it occurs to the writer that what was said upon the subject both in the original opinion written by Judge Lattimore, and in the concurring opinion written by Presiding Judge Morrow is absolutely sound, and that anything further would merely be a multiplication of words. The exact point was decided adversely to appellant's contention in Sapp v. State, 87 Texas Crim. Rep., 621. There is nothing in the record to intimate that the learned trial judge was acting arbitrarily in the matter to embarrass appellant, nor is there anything which questions the good faith of the court in an effort to exercise the discretion which was necessarily vested in him under the circumstances.

The motion for rehearing is overruled.

*Overruled.*

### DISSENTING OPINION ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE (Dissenting).—The proof was to the effect that appellant, using a pistol, shot and killed U. J. Thompson. According to the appellant's testimony, he was the possessor of a truck by means of which he made a livelihood in doing hauling for hire; that in the course of his business he had been mistreated by officers who, he claims, had destroyed the tires on his truck by shooting them; that his life had been threatened by officers. He referred to several instances in which the utility of his tires had been destroyed by shots from guns in the hands of officers and that he had been otherwise abused; that at one time he had appealed to the Governor of the State to protect him against mistreatment of which he complained. Prior to the occasion of the homicide appellant owned a pistol and made an agreement with the owner of another pistol to the effect that an exchange would be made provided appellant would pay the difference of five dollars between the two. Shortly before the homicide appellant made the exchange and took the pistol which he had acquired, together with cartridges to fit it, and walked out upon the street. Without stating details, the evidence justifies a finding by the jury that appellant was unlawfully carrying a pistol at the time of his arrest. Whether the deceased unlawfully assaulted the appellant or otherwise transcended his authority in attempting the arrest of appellant was made a controverted issue of fact by the evidence. Appellant claimed that as he started to open the door

of his car some one called him; that when he turned around he was confronted with a "pretty good-sized man," who demanded the appellant's pistol. Upon complying with this request appellant was struck with a pistol. The parties clinched and both fell to the ground. From the appellant's testimony we quote:

"He knocked me down and he went down on top of me. I didn't know he was an officer. I didn't observe any badge or anything else about him that would indicate that he was an officer. He just said, 'Hand me that gun.' He had his gun in his hand. He didn't say he was an officer. He didn't advise me that he had a warrant for me. I handed him my gun because he had the advantage of me and I couldn't do anything else. When I was knocked down, Mr. Thompson went down on top of me and I had hold of his gun."

Appellant claims that in the scuffle the deceased was accidentally shot. Upon that subject the evidence is conflicting. It was submitted to the jury, as above stated, in an adequate charge. It is the appellant's contention that the shot which killed Thompson was accidental so far as he (appellant) was concerned. The State's testimony presented the theory that appellant was the aggressor and the jury solved that question in favor of the State. We are not prepared to say that in doing so the evidence would not justify their conclusion.

In his motion for rehearing appellant insists that his Special Charge No. 1 should have been given. The charge in substance is that if appellant was unlawfully carrying a pistol, he could not be convicted if the jury believed that in the encounter with the deceased the appellant acted alone upon his necessary self-defense. The subject of self-defense was adequately presented in favor of the appellant in a number of instructions given to the jury, notably, in paragraphs 14, 15, 16, 27 and others of the court's charge.

The defensive theories are presented in paragraphs 10, 12, and 13-B. In paragraph 10 the jury was instructed that unless malice aforethought was proved there could be no conviction for a greater offense than murder without malice. Paragraph 11 defines murder without malice in an appropriate manner. Paragraph 12 elaborates the defensive theory of the absence of malice. Paragraph 13 further warned the jury that there could be no conviction for a higher penalty than murder without malice unless malice aforethought was adequately proved. Paragraph 13-B admonishes the jury that there could be no conviction of the appellant unless he, with malice, voluntarily killed the deceased by shooting him with a pistol, and that if upon

that subject there existed a reasonable doubt, he should be acquitted.

Paragraph 14 adequately charged the law of self-defense and apparent danger and that there would be no necessity of retreating.

Paragraph 15, in a very comprehensive and correct manner, sets forth the appellant's right to act in self-defense and advises the jury that if deceased was making an attack with a weapon which, in the manner of its use, might be reasonably calculated to produce death or serious bodily harm, the law presumes that the deceased intended to murder or inflict serious bodily injury upon the accused.

Paragraph 16 charges the jury that appellant was justified in firing the first shot, if he did so, and that he was justified in striking the deceased with a pistol as long as danger, real or apparent existed as judged from the standpoint of the appellant.

Paragraph 17 instructed the jury fully upon the subject of accidental killing and embraced the legal elements of reasonable doubt in favor of the accused. Likewise, the subject of accidental killing was charged in favor of the appellant in paragraph 18 of the charge.

Paragraph 24 of the charge again admonished the jury in terms favorable to the appellant, in substance, that on the failure on the part of the deceased to advise appellant that he was an officer, unless that fact was known to the appellant, he would have had a right to resist arrest and death, if necessary, to protect himself against death or serious bodily injury, real or apparent, as viewed from his standpoint.

In Paragraph 26 the jury was instructed as to the appellant's legal rights in the event of an illegal arrest.

Paragraph 27 presents the appellant's right to resist an arrest, which, from his standpoint, appeared to be made without authority. Likewise, if the officer used excessive force in making the arrest, the rights of the appellant were protected. The same subject is embraced favorable to the appellant in paragraph 20 of the court's charge.

Embraced in the charge of the court is the following: "You are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant had made threats prior to the time of the homicide, said threats would not deprive him of his right of self-defense if he did or said nothing at the time of the homicide which was intended to induce the deceased to attack him."

Appellant refers to the above in his brief, but we find no ex-

exception made to it at the time of the trial. All the other paragraphs of the charge upon which there is criticism in the brief were preserved by exceptions during the trial.

It seems that the appellant was indicted for murder on July 27, 1933. On the 31st day of that month he presented to the judge of the District Court of McLennan County (in which the prosecution was pending) an application for a writ of habeas in which he sought the privilege of bail. A hearing was set by the court for August 7, 1933. Upon the hearing of the application the district judge denied bail from which order the appellant appealed to this court. The date on which bail was denied was August 18, 1933, at which time the Court of Criminal Appeals was in vacation and was without power to decide the appeal, under article 5, section 5 of the Constitution of Texas. At the beginning of its term the court, on October 11, 1933, rendered its decision in favor of the appellant's right to bail. Before going to trial in the district court, appellant sought a delay to await the decision of the Court of Criminal Appeals on his appeal. Delay was denied and due exception preserved to the refusal of the district court to postpone the trial awaiting a decision of the appellant's appeal on the question of bail. After the motion to continue was denied, appellant was put to trial against his will and while in custody. A verdict assessing his penalty at life imprisonment was rendered against him. His appeal from that judgment is discussed in the beginning of this opinion and the conclusion is expressed that aside from the question of bail his complaints of the procedure are untenable.

This court, as above stated, on October 11, 1933, reversed the judgment of the district court denying bail and ordered a new trial. Later, the State's attorney sought a rehearing which was granted. Appellant complained in a motion for rehearing, which was overruled, and on this appeal on the merits of his conviction, he challenges by proper procedure the legality of his conviction on the ground that against his will he was illegally put to trial while in custody when he was entitled to release on bail.

In Art 1., Sec. 11 of the Constitution of Texas, it is said: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law."

A capital offense is one for which the highest penalty is death. In the present instance, appellant was charged with murder, which is a capital offense. The penalty assessed against

him in the trial court was confinement in the penitentiary for life.

The State's attorney assumes that because the verdict of the jury embraced a penalty which would ordinarily not be bailable, that the error of the trial court in requiring appellant to stand trial while in custody demonstrates that the rights of the appellant were not transgressed. The right to be free from custody during the trial of one accused of crime is of such value and importance that its unauthorized denial may seriously impair his defense and do him irreparable injury. It has been said that the fact that one charged with an offense, who is brought back in and out of court in the custody of an officer, may be regarded by the jury as implying that the accused on trial is so affected with guilt that bail has been denied. That such impression could not fail to be harmful has often been stated in judicial opinions. Moreover, one who is put on trial for his life or liberty may be hampered in conferring with his counsel and with his witnesses. The subject has been so often discussed and its ill effect so definitely determined that further discussion seems superfluous. The inquiry in the present appeal, as in others of the same nature, is whether the valuable right mentioned was improperly denied. That is to say, was the accused illegally denied the right to bail and put to trial while in custody, while under the law he should have been allowed bail and enabled to appear as a free man? On the subject this court has often spoken as is reflected by its reported decisions. See among others Choice v. State, 52 Texas Crim. Rep., 285; Streight v. State, 62 Texas Crim Rep., 453, and precedents cited.

Appellant quite properly asserts that his conviction may have been influenced by the fact that he was illegally held in custody during his trial. His contention seems difficult to refute. That at the time of his trial his case was not a capital one in which the proof was evident is demonstrated by the result of his trial and by the opinion of this court in his habeas corpus appeal. At the time he was put to trial his right to bail was guaranteed by the Constitution of the State. That in refusing bail the trial court erred is made evident by the result showing that his case was not a capital one. The fact that the verdict fixed his penalty at more than fifteen years in the penitentiary supports rather than detracts from his claim that his constitutional right to bail was denied. This for the reason that if he had been accorded the privilege of bail the verdict might have been more favorable. In the opinion of the writer, when one accused of crime demands in a proper manner the

right to bail, the only discretion possessed that may be exercised by either the trial or the appellate court is to determine whether the evidence shows the charge to be one of proof evident of a capital case, as that term is defined in the Constitution to which reference is made above. Unless it is a capital case in the opinion of the court, whether it be the trial or the appellate court, the Constitution demands that the right to bail be not denied.

The terms of the district courts are fixed by the Legislature and changeable at its will. By legislation the district courts have the power to operate in special sessions. The term of the appellate court is fixed definitely by the Constitution. It is without power to entertain an appeal during its vacation. The procedure followed in the present appeal, namely trying a case in which the trial court denies bail during the vacation of the appellate court, assumes the power of the Legislature by the trial court to annul the right of appeal or to destroy the authority of the appellate court in a case in which the accused on trial seeks and is denied bail. That no such right is given or is to be implied by the Constitution seems obvious.

At the time of affirming this case, the writer entertained and expressed the view that in forcing appellant to trial pending his appeal on the question of his right to bail no wrong was done him. Since then my study of the provisions of the Constitution of this State touching the right to bail, except in criminal cases where the "proof is evident," convinces me that it was the imperative duty of the trial court to refrain from forcing the accused to trial while there was pending upon appeal the question of his right to bail, and that when, as in the present instance, such right was disregarded and he was put to trial while in custody, when, as a matter of fact, in the opinion of the appellate court, he was entitled to bail, there is no alternative consistent with the Constitution other than to grant a new trial.

Entertaining the opinion mentioned, I am constrained to enter my dissent from the order of my associates in their disposition of the motion for rehearing.

*Reported in 126 Texas Crim. Rep., 25.